IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW JERSEY,

AT JUNE TERM, 1853.

---

## THE MORRIS CANAL AND BANKING COMPANY v. THE STATE.

1. A public road may be laid out by the surveyors of the highways across a navigable canal constructed by the authority of the state.

2. A canal company is not bound by the principles of the common law, independent of its charter, to erect or maintain a bridge over the canal where a highway may be laid out over the same after its construction.

3. The Morris Canal and Banking Company are not compelled by their charter to make and maintain bridges over their canal, where the same is crossed by a highway laid out subsequent to the construction of the canal.

---

The indictment in this case was found in the Passaic county Oyer and Terminer against the Morris Canal and Banking Company, and was removed into this court by *certiorari*.

The indictment was for not keeping in repair a certain bridge over the canal of the defendants, where the same crossed a public highway, in the township of Acquackanonk, in the county of Passaic, and charging, that the defendants, by the twelfth section of their charter, were bound, "at their proper expense, to make good and sufficient bridges across the said canal, where the same crossed any public road, and keep the

62

same in repair, so as to prevent any inconvenience in the usage of the said road by reason of the said canal crossing the same."

The validity of the indictment was submitted to the court upon a statement of facts agreed upon, of which the only one material to the question upon which the decision is given was, that the public highway in question was laid out after the construction of the canal.

Argued before the CHIEF JUSTICE and Justices ELMER and HAINES, by Mr. *Frelinghuysen,* for defendants, and Mr. *Barkalow,* for the state.

Mr. *Frelinghuysen,* for defendants.

There are two questions in this case.

*First.* Have the public a right to place a bridge over this canal.

*Secondly.* If the public have that right, must the company make and maintain the bridge.

1. A bridge can be placed over the canal only upon compensation and by express authority.

The charter of the company requires them to pay for all lands taken for their canal, and vests them in the company. They were, therefore, the private property of the company, and, could not be taken for public use without compensation, by the constitution of this state, Art. 1, § 16 ; and at the time laid in the indictment, May 1st, 1849, the act of March 1, 1850, authorizing compensation for land taken for roads had not passed. And it has been adjudicated in this state, that the lands that could be taken for roads under the old constitution, and included in the exception in the above section of the new, are not lands improved by the construction of a turnpike or canal upon them. 2 *Zab.* 302, *Matter of Highway.*

This canal cannot be taken for a public road without *express* authority. If the state may take the property of a corporation upon compensation by the right of eminent domain, the legislature of New Jersey never granted this power to surveyors of the highways. 6 *Howard* 507 ; 4 *Wheat.* 518 ; 2 *Green* 254, *State* v. *Demott ;* 2 *Harr.* 129, *Sinnickson* v. *Johnson.*

2. If the public can lay out a highway over this canal, the public must make and maintain the bridge. The canal is no nuisance, it is expressly authorized by law; and wherever bridges are required by the public for their own use they are obliged to build and maintain them. 5 *Pick.* 486; 2 *Doug.* 749; 2 *Kent's Com.* 424; 2 *East* 350; 5 *Burr.* 2594; 2 *W. Bl.* 685; 3 *M. & S.* 526; 14 *East* 317; 2 *M. & S.* 513; 13 *East* 220; *Spenc.* 659; 5 *Hill* 170.

This duty can only be based upon the words of the charter of the company, (*Acts of* 1824, *p.* 154, § 12,) and the language of this section cannot be fairly construed to extend beyond roads then existing. The same words apply to farms; and if the company are bound to build a bridge for every future road, then every farm acquiring land beyond the canal, and every farm divided into two, would be entitled to a new bridge.

In Essex county, the county builds the bridges over this canal; their counsel have so advised. *Spenc.* 249, *Van Schoick* v. *R. R. Company*; 2 *Harr.* 314; 1 *T. R.* 52.

The law of the state, as to bridges over mill dams and raceways, is precisely what we contend the legislature intended in the case of this company. If the raceway is made before the road, the public must build the bridge, but if a raceway is dug across a road, the owner must maintain the bridge. *R. S.* 524, § 26.

*Barkalow*, for the state.

1. As to the first point, whether the public can lay a road across a canal, it is hardly an open question; a canal is like a turnpike or a railroad, and public roads for years have been laid over all of them.

The case in 2 *Zab.* 304 expressly distinguishes the crossing of a turnpike from the appropriation of the whole of it, for laying a road over it.

2. The question, as to the liability of the company to maintain the bridge, rests upon the 12th section of their charter. This obliges them to maintain a bridge wherever their canal crosses a public road. It makes no distinction as to when laid out. The words, in their grammatical and plain meaning, include future, as well as existing roads.

Without this provision, the company would have been obliged to build bridges for existing roads. Its only use and effect was for roads to be laid out.

The CHIEF JUSTICE. The indictment charges the defendants with the commission of a nuisance, by omitting to build a bridge across their canal, where it is intersected by a public highway. It is admitted that the highway was laid out and opened after the canal was constructed and in use; and it is agreed by counsel that the only question submitted for the consideration of this court is, whether "the Morris Canal and Banking Company are bound by their charter to make and maintain a bridge across the said canal, or the place described in the said indictment."

Under this state of the case, the authority to lay out a highway across the canal may properly be assumed. The road for which the bridge is required is alleged to be an existing highway. Its existence is not denied, and the case appears to have been prepared with the design of excluding any controversy upon this point. But as this matter, at the suggestion of the court, was discussed upon the argument, it may be proper to consider whether there was rightful authority to lay out the road in question. It is not claimed that the surveyors of the highways, in laying out a road across a canal, may either obstruct its navigation or impair the franchise of the corporation. The improvement made by the canal company is not designed to be appropriated to the public use. It is designed merely to secure to the public a passage across the canal. In doing so, the land or property of the company may be, to some extent, unavoidably encroached upon. But there is no interference with the corporate franchises of the company with the legitimate and appropriate uses of the canal, and no appropriation of the improvements of the company to the public use. The case does not fall within the principle adopted by the court in the *Matter of Highway*, 2 *Zab.* 293.

It would seem clear in principle, as well as indispensably necessary to the public convenience, that highways may be laid out across the canal, and that, consequently, there was lawful authority for laying out the road in question.

The right of laying out the road across the canal being conceded, it remains to inquire whether the canal company is bound to build and maintain the bridge, or whether that duty devolves on the public. There is clearly at common law no obligation upon the company to construct or maintain the bridge. They created no nuisance at the point where the bridge is now required by the construction of the canal. No highway was in existence at that place when the canal was built, and, consequently, no way was obstructed by the act of the defendants. The company did no act for which they were indictable ; they created no nuisance which they were bound to abate.

If the defendants are bound to construct the bridge, it must be by virtue of some obligation created by their charter. The indictment properly rests the duty of the company to build the bridge solely upon this ground.

The 12th section enacts, that when the canal shall cross any road or farm, it shall be the duty of the company, at their proper expense, to make. good and sufficient bridges across said canal, and to keep the same in repair, so as to prevent any inconvenience in the usage of the said road or farms, by reason of the said canal crossing the same.

It is certainly true, as was contended by the counsel of the state, that where a canal and highway intersect each other, it is grammatically and mathematically correct to speak of the canal crossing the road, or the road crossing the canal. In describing an existing state of things, either form of expression might be adopted with equal propriety. But at the passage of the act, the canal had no existence. The legislature were making provision for a work about to be constructed, and they declare that when the canal shall cross any public road or farm, that is when the canal shall be constructed across any public road or farm, it shall be the duty of the company to build and repair bridges. Such is the plain and obvious import of the language. To construe it to mean, when the canal shall cross any public road, or when any public road shall hereafter be laid out across the canal, the company shall build and repair bridges, is giving a broader meaning to the require-

ments than the language fairly imports, and one which could not have been intended to apply to farms. It never could have been the design of the legislature to require that in all future time, whenever a land holder should choose to unite two tracts of land, lying on opposite sides of the canal, into one farm, the company should build and maintain a bridge for his accommodation. If the language of the act will not bear this construction in regard to farms, neither can it in regard to highways. The same construction must, of necessity, be adopted in regard to both.

The design of the legislature, in the enactment of the 12th section, was to guard against any nuisance by the company. They designed that the company, both in regard to highways and farms, should, as far as possible, leave the way as they found it: when they obstructed a passage along a highway, from one part of a farm to another, they had to furnish a new one. The effect of the provision, as applied to highways, is simply to enforce the common law obligation resting on the company. This construction has reference exclusively to the language of the charter now under construction. A somewhat similar provision in other charters is couched in different language, which will admit of, and perhaps may require, a different construction.

There must be judgment for the defendants.

ELMER, J. The question presented to the court upon the indictment in this case, and the facts agreed upon, is whether the Morris Canal and Banking Company is bound to build a bridge across the canal, where it is crossed by a public road laid out and opened since the construction of the canal.

By the common law, as well as by the statute 22 Hen. 8, ch. 45, the counties were chargeable with the making and repairing of public bridges within their limits, unless some other persons, lands, tenements, or bodies corporate where shown to be liable, by reason of tenure, prescription, or some other special obligation. 2 *Inst.* 701; 2 *East* 342, *King* v. *West Riding ;* 2 *M. & Sel.* 513, *King* v. *Inhab. of Kent.*

Public bridges in this state are now, by express statute, to

be erected and maintained by the counties or townships in which they are situate ; and this has been the law from the first settlement of the state, except where special acts have made other provisions.

It is therefore necessary, to maintain this indictment, to show affirmatively that the obligation to build and maintain the bridge in question is thrown, by some act of the legislature, either by express enactment or by fair implication, upon the company. This, it is insisted, is the effect of the twelfth section of the act of incorporation. That section enacts, "that when the canal shall cross any public road or farm, it shall be the duty of said company, at their proper expense, to make good and sufficient bridges across said canal, and to keep the same in repair, so as to prevent any inconvenience in the usage of the said roads or farms by reason of the said canal."

That the company is required, by this section, to erect and maintain bridges in all cases where the canal crossed an existing public road, is not disputed. The precise question to be decided is, whether that obligation extends to bridges made necessary by roads subsequently laid out. The indictment avers that a public road was duly laid out, and that the canal crosses it. The right of the surveyors of the highways to lay out a road, and of the county to erect a bridge across the canal, is not necessarily involved. As the case is presented, it must be assumed that the road itself is legally established across the canal. It may be proper, however, to remark, that if it be admitted, according to the case in 2 *Zab*. 304, that a highway cannot be laid out on the bank of a canal or along a turnpike, yet, as there suggested, the fair application of this principle does not warrant the conclusion that a canal or turnpike may not be incidentally crossed. The property of the canal company cannot be taken for the public use without just compensation, and perhaps cannot be taken at all for the purpose of making a highway, without the authority of a special act of the legislature. But the mere act of crossing the canal, if such a bridge be built as does not materially interfere with the appropriate use of it, may well be considered not to be such a taking of property as requires any compensation. The legis-

lature cannot be supposed by the mere act of authorizing the canal, to have intended to prevent the future laying and opening of such public roads as subsequent experience should prove to be necessary. If the construction of the twelfth section of the charter be as is insisted on the part of the state, it is expressly designed to provide for such roads, and to require bridges to be constructed by the company wherever they shall cross the canal.

But the plain and obvious meaning of the language used in that section is, that, as a condition upon which authority is granted to construct the canal, and exact toll for its use when they constructed it, if it should then cross any public road or farm the company should build a bridge, and afterwards keep it in repair, so as to prevent any inconvenience in the use of said road and farm. In other words, they were to compensate by a bridge for the injury done to any existing road or farm, so far as such a structure would effect that object; and for any further injury to private property, a pecuniary compensation was required to be made, in the manner prescribed by the act. The language used does not necessarily imply, nor do I see any reason to infer that it was meant to imply, that roads afterwards laid out and opened across it, or farms afterwards occupied, if such there should be, were also to be provided with bridges at the expense of the company. To give the section such an interpretation, would be to extend the meaning of the language employed beyond its fair and natural import without any adequate reason. If the contrary construction would deprive the public of the right to have a road or bridge, whatever might be the necessity for it, we might well hesitate to decide. But, at most, the only question is, who shall incur the expense of the bridge, the company whose canal renders it necessary, or the public who are to use it. *Prima facie* the burthen should fall on the latter; and this being so, the words of the charter cannot be properly held to imply more than their proper grammatical meaning.

In the case of the Trenton Water Power Company (*Spencer* 659), it was held by this court, that where a company was empowered to cut a water-course which crossed a public street,

they were bound to build all necessary bridges, although the act made no special provision on the subject. And in the case of the *King* v. *Kerrison* (3 *M. & Sel.* 526), it was held by the Court of Kings Bench, that where certain persons and their successors were authorized by an act of parliament to make a river navigable, and to cut the soil of any person for making new channels, by virtue of which they cut through a highway, and rendered it impassable, and a bridge was built, over which the public passed, the undertakers were bound to keep the bridge in repair, such being, in the opinion of the court, the fair meaning of the act. According to these decisions, the company now indicted would have been held liable to construct and keep in repair bridges for the use of all existing public roads, without the express requirement of the twelfth section; and hence, it is urged, it ought to be inferred that the legislature meant to do more than to affirm an obligation that would have been implied. But such express affirmations of duties, which might otherwise be fairly implied, are very common in acts conferring special authority, and especially in those conferring upon a company the state's power of eminent domain, and are so obviously proper that it would be very unsafe, on this account, to depart from the plain meaning of the language employed. Had more been meant, more could have been easily expressed, and we ought to suppose would have been.

The preamble of the act authorizing the canal over which the road in question passes, declares that its construction will be of great public benefit and advantage to the people of New Jersey, and the twenty-fifth section enacts that it shall be esteemed a public highway. It is not therefore a nuisance, but was designed to be, and is, a navigable stream of water, in the free and unobstructed navigation of which the public is deeply interested, although a private company owns and controls it, and derives a revenue from its use. If it be needful for the public convenience that a public road should be laid across it, it is reasonable that this should be done at the public expense. The legislature itself cannot take the property, or deprive the company of its use, except for the public benefit and by making just compensation. The canal is private property, and so is a

dam and raceway supplying water to a mill or manufactory. The general road act has provided that the public shall build and repair the bridges over such races, unless the highway hath been laid out before the making of the dam and race, and the same just principle is applicable to a navigable canal. Nothing less than an express and unambiguous declaration in the act authorizing such a canal can justify a different rule. Being very clearly of opinion that there is nothing in the act in question which makes it the duty of the company to build the bridge, I think our judgment upon the case presented should be for the defendants.